**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ZANE CAMPBELL         *

                         *

      v.                 *          **Civil Case No. 14-1331-GLR**

                         *

COMMISSIONER, SOCIAL SECURITY   *

                         *

               *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Mr. Campbell's reply memorandum. [ECF Nos. 22, 24, 25]. I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Commissioner's motion be granted and Plaintiff's motion be denied.

Mr. Campbell protectively filed a claim for Supplemental Security Income ("SSI") on October 7, 2010. (Tr. 78, 134–42). His claim was denied initially on February 10, 2011, and on reconsideration on June 29, 2011. (Tr. 80–83, 88–89). An Administrative Law Judge ("ALJ") held a hearing on November 20, 2012, at which Mr. Campbell was represented by counsel. (Tr. 34–77). Following the hearing, the ALJ determined that Mr. Campbell was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 16–29). The Appeals Council denied Mr. Campbell's request for review, (Tr. 1–6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Campbell suffered from the severe impairments of attention

deficit hyperactivity disorder ("ADHD"), depression, bipolar I disorder, and anxiety. (Tr. 21). Despite these impairments, the ALJ determined that Mr. Campbell retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 C.F.R. 967(c) except the claimant should avoid concentrated exposure to hazards, defined as moving machinery and heights. Nonexertionally, the claimant is limited to simple, unskilled work, work not at a production pace, paid by the piece or on an assembly line, work that is essentially isolated with only occasional supervision, only occasional contact with co-workers, and low-stress work defined as only occasional changes in the work setting.

(Tr. 23). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Campbell could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 28–29).

Mr. Campbell disagrees. He raises two primary arguments on appeal: (1) that the ALJ erred in evaluating the medical opinion evidence; and (2) that the ALJ erred in evaluating his credibility and the credibility of his sister, who testified on his behalf. Each argument lacks merit.

I.      **The ALJ Provided Substantial Evidence in Support of his Evaluation of the Medical Opinion Evidence of Record**

Mr. Campbell claims that the ALJ made several errors in evaluating the medical opinion evidence, which he argues resulted in an erroneous RFC determination. Mr. Campbell has not, however, identified any evidence undermining the ALJ's evaluation of the opinion evidence, and the ALJ provided substantial evidence in support of her RFC determination.

A.      **The ALJ Supported Her Assignment of "Significant Weight" to Dr. Lessans's Opinion with Substantial Evidence**

First, Mr. Campbell argues that the ALJ erred by assigning greater weight to the opinion of a non-examining State agency consultant, Dr. Lessans, than was assigned to the opinions of other examining consultants and Mr. Campbell's treating physician. Pl. Mem. 16. In assessing

Mr. Campbell's RFC, Dr. Lessans opined that Mr. Campbell suffered moderate limitations in his ability: (1) to understand and remember detailed instructions; (2) to carry out detailed instructions; (3) to maintain attention and concentration for extended periods; (4) to complete a normal work-day and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) to accept instructions and respond appropriately to criticism from supervisors; and (6) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 282–83). Dr. Lessans opined that Mr. Campbell was "not significantly limited" in any other areas. *Id.*

In support of his argument, Mr. Campbell emphasizes that Dr. Lessans did not examine Mr. Campbell. However, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6P, 1996 WL 374180, at *3 (July 2, 1996). Accordingly, the fact that Dr. Lessans did not have the benefit of examining Mr. Campbell does not undercut the validity of his opinion. *See* 20 C.F.R. § 416.927(e)(2) (explaining that State agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"). Moreover, I note that although the record contained medical opinions from examining sources, contrary to Mr. Campbell's suggestion, the record was void of any opinion evidence from a treating source.[1]

Because Dr. Lessans did not examine the record evidence subsequent to June 28, 2011, Mr. Campbell also argues that Dr. Lessans's opinion could not have been "wholly consistent with the longitudinal record," as was found by the ALJ. Dr. Lessans apparently did not have the

---

[1] Medical opinions are statements from "acceptable medical sources" that "reflect judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.927. Accordingly, the treatment notes from Mr. Campbell's primary care physician do not constitute "medical opinions" subject to evaluation under the guidelines of 20 C.F.R. § 404.927.

benefit of reviewing:  (1) treatment records from Upper Bay Counseling and Support Services ("Upper Bay"), dated August 3, 2011, and October 13, 2011; (2) treatment records from Dr. Mulvey, Mr. Campbell's primary care physician, dated through April 27, 2012; and (3) a Psychological Evaluation and a Psychiatric Review Technique completed by Dr. Ansel on December 5, 2011.  (Tr. 300–47).  First, I note that contrary to Mr. Campbell's contention, it is entirely possible for records from treatment that occurred subsequent to an opinion to be consistent with that opinion.  Nevertheless, Mr. Campbell argues that the longitudinal record, including the subsequent treatment records, demonstrates a significantly more limited RFC than that opined by Dr. Lessans.  Mr. Campbell has not, however, identified specific evidence indicating more severe limitations than those opined by Dr. Lessans.  Accordingly, I have thoroughly reviewed the subsequent treatment notes to determine whether they undermine the ALJ's conclusion that Dr. Lessans's opinion is consistent with the longitudinal record.

The treatment records from Upper Bay consist of a Comprehensive Intake Assessment, a Mental Status Exam, and a Diagnostic Review Form, all dated August 3, 2010, and a Discharge Summary dated October 13, 2011.  (Tr. 300–14).  In the intake assessment, Mr. Campbell reported that Lexapro and Adderall were working "very well," and that on his medications he felt more energetic, less restless, and that he could concentrate better; he reported no feelings of sadness or depression, that his mood was "stable," that he had good sleep patterns, and a normal appetite.  (Tr. 309).  The Diagnostic Review Form indicates that Mr. Campbell was diagnosed with Dysthymic Disorder, and a GAF of 55, indicating moderate symptoms or moderate difficulty in functioning.  (Tr. 313–14).  Finally, the Discharge Summary reveals that Mr. Campbell sought discharge because he was doing much better and intended to go back to work. (Tr. 301).[2]

---

[2] At the hearing, Mr. Campbell testified that he declined to pursue treatment at Upper Bay because he didn't care for

The treatment records from Dr. Mulvey consist of seven appointments between December 2010 and April 2012.  From December 2010 to October 2011, Dr. Mulvey's only notes concerning Mr. Campbell's mental impairments characterized his ADHD as "stable" or "doing well," his mood as "alert and cheerful," and his depression as "doing well."  (Tr. 331–38).  In December 2011, Mr. Campbell complained that his depression symptoms had worsened over the past several months.  (Tr. 339).  In response, Dr. Mulvey switched Mr. Campbell from Lexapro to Effexor, and at his January 2012 follow-up, Mr. Campbell reported that he was doing "MUCH better" on Effexor.  (Tr. 339–44) (emphasis in original).  Finally, in April 2012, Dr. Mulvey noted that Mr. Campbell's ADHD, depression, and anxiety were again stable.  (Tr. 347). The treatment records from Upper Bay and Dr. Mulvey do not indicate limitations more severe than those opined by Dr. Lessans, nor do they undermine the ALJ's statement that Dr. Lessans's opinion was consistent with the longitudinal record.

Finally, I note that the opinion in Dr. Ansel's December 5, 2011, psychological evaluation and psychiatric review technique was discredited by the ALJ.  As discussed below, the ALJ provided substantial evidence in support of her assignment of "very little weight" to Dr. Ansel's opinion.  Because Dr. Ansel's opinion was accorded very little weight, based in part on the fact that it was inconsistent with the longitudinal record, it does not undermine the ALJ's conclusion that Dr. Lessans's opinion was consistent with the longitudinal record.

### B.     The ALJ Adequately Evaluated and Credited the Limitations in Dr. French's Opinion

Mr. Campbell also argues that the ALJ misconstrued the opinion of Dr. French, who conducted a Mental Status Evaluation on May 24, 2011.  Mr. Campbell contends that the ALJ "erroneously determined that Dr. French stated that Mr. Campbell just had a 'mood disorder' with symptoms of depression."  Pl. Mem. 17.  This argument is without merit.  The statement of

---

his psychiatrist.  (Tr. 53).

the ALJ to which Mr. Campbell refers is a direct quote from Dr. French's opinion about the impact of Mr. Campbell's symptoms. *Compare* (Tr. 27) *with* (Tr. 276). Moreover, the ALJ credited the impacts identified in Dr. French's opinion and determined that they were consistent with the limitations in her RFC assessment. (Tr. 27). Mr. Campbell has not identified any evidence suggesting that the impacts identified by Dr. French are more severe than those set forth in the ALJ's RFC determination. The ALJ supported her evaluation of Dr. French's opinion with substantial evidence.

**C.     The ALJ provided Substantial Evidence in Support of her Assignment of "very little weight" to the opinion of Dr. Ansel**

Mr. Campbell next claims that the ALJ erred by assigning "very little weight" to the opinion from Dr. Ansel's one-time December 5, 2011, examination. Specifically, Mr. Campbell argues that the ALJ improperly based her rejection of Dr. Ansel's opinion on the fact that his examination of Mr. Campbell occurred at the request of Mr. Campbell's attorney, rather than in an attempt to seek treatment. Pl. Mem. 20. Mr. Campbell's argument misconstrues the ALJ's rationale. The ALJ's reference to the attorney referral was to clarify that Dr. Ansel's examination of Mr. Campbell did not undermine her determination that the extreme limitations opined by Dr. Ansel are inconsistent both with Mr. Campbell's failure to seek treatment from a mental health provider since August 2011, and with the notes of his treating primary care physician.

Mr. Campbell also claims that the ALJ incorrectly quoted Dr. Ansel as opining that Mr. Campbell "did appear to be capable of conforming his behavior to meet the demands of substantial gainful employment or handle significant job-related stress," and erroneously determined that Dr. Ansel's opinion was "quite conclusory." Pl. Mem. 20–21. Mr. Campbell correctly notes the ALJ's error in quoting from Dr. Ansel's opinion, which stated that Mr. Campbell did *not* appear capable of those activities. *Compare* (Tr. 28) *with* (Tr. 318). However,

given the context of the error and the weight the ALJ assigned Dr. Ansel's opinion, the omission

of the word "not" appears to be a typographical error, rather than a misunderstanding by the

ALJ.[3]   Moreover, the ALJ explained that she found Dr. Ansel's opinion "quite conclusory"

because "he provided no explanation of the evidence relied on in forming that opinion."  (Tr.

28).   Mr. Campbell claims that the ALJ based her opinion on the evidence of record, including

evidence from Upper Bay, and the results of intelligence testing.   However, as discussed above,

the evidence from Upper Bay is consistent with the ALJ's conclusions.   Moreover, the

intelligence testing revealed an average level of intellectual functioning, and it is unclear how

such results support the extreme limitations opined by Dr. Ansel.   The ALJ thus provided

substantial evidence in support of her evaluation of Dr. Ansel's opinion.

### D.      The ALJ Properly Evaluated the GAF Scores in the Record

Finally, Mr. Campbell makes several arguments that the ALJ's evaluation of the GAF

scores was improper.   Specifically, Mr. Campbell argues that the ALJ attempted to discredit

GAF scores generally, but then relied on the GAF scores of the medical consultants in making

her decision.  Pl. Mem. 17.   Contrary to Mr. Campbell's contention, however, in determining the

functional limitations from which Mr. Campbell suffers, the ALJ did not accord weight to any

GAF scores.  *See* (Tr. 25–30).  Rather, in the course of reviewing the medical evidence, the ALJ

simply noted each of the GAF scores Mr. Campbell had been assigned by various physicians.

Moreover, while nothing prohibits an ALJ from considering GAF scores as one component of a

full analysis of the evidence of record, it is well established that GAF scores are not

determinative of disability.  *See, e.g., Davis v. Astrue*, Case No. JKS–09–2545, 2010 WL

5237850, at *3 (D. Md. Dec. 15, 2010); *Kozel v. Astrue*, No. JKS–10–2180, 2012 WL 2951554,

at *10 (D. Md. July 18, 2012).     In this case, the ALJ then properly acknowledged that Mr.

---

[3] If Dr. Ansel had concluded that Mr. Campbell was capable of those behaviors, it seems unlikely that the ALJ would have assigned that opinion "very little weight," as it would have been consistent with her RFC determination.

Campbell had recently been assigned a GAF score of 25, but explained that due to their subjective nature, GAF scores are not entitled to great weight in making disability determinations. (Tr. 26). Accordingly, Mr. Campbell's argument that the ALJ engaged in an improper evaluation of GAF scores is without merit.

## II.     THE ALJ PROVIDED SUBSTANTIAL EVIDENCE IN SUPPORT OF HER EVALUATION OF THE TESTIMONY OF MR. CAMPBELL'S SISTER, CLARA CAMPBELL.

Next, Mr. Campbell argues that the ALJ erred in evaluating the testimony of his sister, Clara Campbell. In support of his argument, Mr. Campbell makes two claims that both mischaracterize the ALJ's analysis. First, Mr. Campbell contends that the ALJ discredited Mr. Campbell's credibility "because she found that Clara Campbell's testimony was inconsistent with her judicial [RFC] finding." Pl. Mem. 19. However, there is simply no basis for this claim. The ALJ provided a thorough explanation for why she discredited Mr. Campbell's credibility. For example, in discussing the limitations caused by Mr. Campbell's mental impairments, the ALJ explained that the records of Mr. Campbell's primary care physician, who manages the medications for his mental impairments, "show good results with medications contrary to the claimant and his sister's testimony." (Tr. 26).

Next, Mr. Campbell states that the ALJ "discredited" Clara Campbell's testimony because she was a lay witness. However, the ALJ stated that she credited Clara Campbell's testimony to the extent that it was consistent with the ALJ's RFC determination. (Tr. 26). The ALJ then simply noted that, in evaluating Clara Campbell's statements, she took into account the fact that Clara Campbell's statements were from the perspective of a lay individual. *Id.* The ALJ's consideration of Clara Campbell's status as a lay individual was appropriate in light of the fact that the regulatory scheme treats statements differently depending upon their source. *See* 20 C.F.R. §§ 416.912(b)(1)–(3), 416.913(a)–(d). Accordingly, the ALJ's evaluation of Clara

Campbell's testimony was in accordance with legal standards and the ALJ provided substantial evidence in support of her evaluation.

## III.    CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1.  the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 24]; and

2.  the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 22] and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  January 21, 2015                                    _____/s/_____

                                                                          Stephanie A. Gallagher
                                                                          United States Magistrate Judge